ROSE F. LUZON (SBN 221544)
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
401 West A Street, Suite 2550
San Diego, CA 92101
Phone: (619) 235-2416
Facsimile: (866) 300-7367
Email: rluzon@sfmslaw.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel Listed on Signature Page]

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH BASSKNIGHT, On Behalf of Herself, and All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| DOORDASH, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff, Leah Bassknight ("Bassknight" or "Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant, DoorDash, Inc. ("DoorDash" or "Defendant"), and, except for information based on her own personal knowledge, alleges, on information and belief based on the investigation conducted by her counsel, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of a nationwide class and, in the alternative, a New York sub-class defined below, to remedy the violations of applicable consumer protection laws in connection with the overcharges for restaurant meals delivered by

1

DoorDash, a third-party entity that represents itself as an "on-demand delivery service" for restaurant fare.

2.      As described in further detail below and at all relevant times, DoorDash charged and charges an undisclosed and hidden markup on the restaurant food it delivers to consumers in addition to a delivery fee.

3.      Plaintiff alleges violations of the California Consumers Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*; the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*; and the False Advertising Law ("FAL"), California Business and Professions Code § 17500, *et seq.*

4.      In the alternative, Plaintiff alleges violations of New York General Business Law ("NYGBL") § 349; NYGBL § 350; as well as a claim for unjust enrichment.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states as required by 28 U.S.C. § 1332(d)(2).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Defendant because Defendant is authorized to do business, and currently does business, in this State.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and California Civil Code Section 1780(d) because Defendant conducts business in this District and a substantial portion of the events and conduct giving rise to Plaintiff's claims occurred in this District.  In addition, DoorDash maintains its headquarters in San Francisco, California, which is in this District.

## PARTIES

8.      Plaintiff is a resident of Brooklyn, New York, and a citizen of New York.

2

CLASS ACTION COMPLAINT

9.      DoorDash is a Delaware corporation with is principal place of business at 116 New Montgomery Street, San Francisco, California 94105.  DoorDash is a citizen of California and Delaware.

## FACTUAL ALLEGATIONS

### A.      Background

10.      Founded in 2013, DoorDash represents that it "is a technology platform that connects local businesses to people," with the "aim to make every city smaller by bringing [the consumer] food–faster, fresher, and from farther away."

11.      DoorDash currently operates in the United States and Canada, which includes the following cities/markets: Atlanta, Georgia; Bellevue, Washington; Boston, Massachusetts; Brooklyn, New York; Charlotte, North Carolina; Chicago, Illinois; Dallas, Texas; Denver, Colorado; Houston, Texas; Indianapolis, Indiana; Los Angeles, California; Manhattan, New York; Minneapolis, Minnesota; Orange County, California; Phoenix, Arizona; San Diego, California; San Francisco, California; San Jose, California; Seattle, Washington; Silicon Valley, California; St. Paul, Minnesota; Toronto, Canada; and Vancouver, Canada.

12.      DoorDash provides its on-demand food delivery to consumers through its mobile device application ("app") and its internet website, www.doordash.com, where customers place orders for meals from various restaurants in the city/market.

13.      On its app and website, DoorDash offers fare from restaurants with which it has a pre-arranged business relationship, as well as restaurants with which it has no such business relationship.

14.      Indeed, some restaurant owners are completely unaware that their food is offered by DoorDash.

15.      Some of the restaurants with which DoorDash has no pre-arranged business relationship have sued DoorDash, alleging that DoorDash has infringed upon their trademarks when offering their fare.  For example, Legal Sea Foods, LLC, which operates a restaurant group consisting of seafood and other restaurants, sued DoorDash for trademark infringement in *Legal*

3

CLASS ACTION COMPLAINT

1   *Sea Foods LLC v. DoorDash, Inc.*, Case No. 1:16-cv-10446-MBB (D. Mass.), while IN-N-OUT

2   BURGERS, which operates burger restaurants in California and other states, did the same in *In-*

3   *N-Out Burgers v. DoorDash [sic]*, Case No. 8:15-cv-1826 (C.D. Cal.).

4   16.     Moreover, despite representations that it would refrain from offering menu items

5   from restaurants that do not want their food sold through DoorDash, DoorDash trains its delivery

6   personnel to remain inconspicuous and hide their affiliation with DoorDash when ordering and

7   picking up food from "non-partner" restaurants.  As set forth herein, DoorDash's unscrupulous

8   conduct extends beyond its dealings with uncooperative restaurants.

9       **B.     DoorDash's Hidden Markup**

10  17.     Despite already charging delivery fees of as much as $5.99 per delivery,

11  DoorDash also routinely marks up the food from unaffiliated restaurants that it offers through its

12  service without disclosing these markups to customers.  In other words, DoorDash charges a

13  higher price on certain food items than the unaffiliated restaurants from which it picks up the

14  food on behalf of the customer.

15  18.     For example, in a blog post detailing the writer's experience and discovery of the

16  price difference between the DoorDash price and the restaurant price, the writer describes the

17  restaurant's receipt left in her order from DoorDash:

18  Take my receipt today [from DoorDash] for instance:

19      1x 1 Biscuit (Homemade Buttermilk Biscuits) $1.50
        1x Macaroni & Cheese (Signature Sides) $2.95
20      1x 3 Piece Tenders Dinner (Chicken Tender Dinner) $8.95
        1x 3 Piece Tenders Dinner (Chicken Tender Dinner) $8.95
21      Subtotal: 22.35
        Tax: 2.07
22      Delivery Fee: 5.99
        Discount: -4.99 (First time order, expect to pay 5.99 on your next order)
23      Delivery Tip: 3.00
        **Total: 28.42**
24
25      The receipt they left in the bag?
26
        3PC TENDER DIN 5.19
27      3PC TENDER DIN 5.19
        SM MAC & CHEES 1.79
28

CLASS ACTION COMPLAINT

BISCUIT .59
SUBTOTAL 12.76
TAX 1.21
**TOTAL 13.97**

Katie Marie, *How Door Dash works and why you should avoid using it*, ChicagoNow, November 17, 2015, *available at* http://www.chicagonow.com/coming-to-terms/2015/11/how-door-dash-works-and-why-you-should-avoid-using-it/.

19.      Thus, in this example, in addition to the $5.99 delivery fee, $3.00 delivery tip, and $0.86 tax difference, DoorDash's hidden markup amounted to ***$9.59, which is more than a third of the total cost.***

20.      Meanwhile, other restauranteurs who have rejected partnering with DoorDash have reported markups of $5.95 for an $11 cheesesteak and a $6.95 markup on a $15 burrito panini.

21.      DoorDash never discloses these mark ups generally and, more specifically, never discloses which menu items are marked up, much less what the price differential is.

22.      Indeed, as explained in an article investigating DoorDash's pricing practices and a leaked DoorDash training video:

> Dashers [*i.e.*, DoorDash delivery service personnel,] are explicitly told to remove customers' receipts from their orders. "Never give a customer a receipt," the video's narrator says.
>
> DoorDash delivers its own receipt electronically to customers, the video explains. "To avoid confusion, we encourage customers and Dashers to use the receipt provided through the DoorDash website and app, which shows the total cost of the order, including item prices, tip and delivery fee," a company spokesperson told Business Insider.
>
> The startup may also not want customers to see price discrepancies. In order for DoorDash to operate, it bakes the delivery fee into each menu item, and a customer may or may not realize they've been upcharged.

Maya Kosoff, *DoorDash, a food-delivery startup that's rumored to be raising at a $1 billion valuation, has some shady instructions for its delivery workers*, Business Insider, Nov. 25, 2015, *available at* http://www.businessinsider.com/leaked-doordash-training-video-2015-11.

CLASS ACTION COMPLAINT

23.     Moreover, as customers are already charged a "delivery fee" by DoorDash, customers naturally would not expect DoorDash to further charge them "service fees" through markups on other items they order.    Doordash's practice is deceptive because the marked up menu items' list prices are overstated in order to roll DoorDash's mark-up into the menu price. In addition, DoorDash's practice is deceptive because it results in "Delivery Fees" that are understated, *i.e.*, DoorDash's true delivery fee (the only disclosed fee for its service other than the driver's tip) includes both the disclosed portion of the fee (typically 3.99 to 5.99) and the undisclosed portion of the fee -- which is often greater than the disclosed portion and is rolled into the menu price.

**C.     Plaintiff's Experience**

24.     Plaintiff is one of the many DoorDash customers who ordered through Defendant after being misled by it about its menu pricing and was overcharged as a result.

25.     From time to time, Bassknight orders prepared meals to be delivered for herself and her family.

26.     Plaintiff regularly uses apps or computer services to order food delivery.

27.     Bassknight learned about DoorDash by word of mouth and was interested in using it because DoorDash offered delivery from certain restaurants not available on other apps or through other services.

28.     Bassknight ordered food for home delivery from local Brooklyn restaurants using the DoorDash app on her smart phone.

29.     On November 28, 2015, Bassknight placed an order using DoorDash to have food delivered from Joya Thai restaurant, located in Brooklyn, New York.

30.     Bassknight ordered, among other things, Pad See Yue, which was listed in the DoorDash entry for Joya Thai restaurant as costing $10.95, and Fried Calamari, which was listed in the DoorDash entry as costing $11.95.

31.     The prices for the above-referenced items disclosed by DoorDash were false and misleading, and contained undisclosed DoorDash charges packed into the price of each dish.

CLASS ACTION COMPLAINT

1    Bassknight also paid a "delivery fee" of $3.99 and paid a tip for the driver of $3.00 as part of this

2    order.

3        32.    According to the online restaurant menu for Joya Thai restaurant found at

4    www.joyabrooklyn.com, however, Joya Thai restaurant charged $8.95 (rather than $10.95) for

5    Pad See Yue and charged $11.90 (rather than $11.95) for Fried Calamari.

6        33.    In total, Bassknight was overcharged by $2.05 on her November 28, 2015 order.

7        34.    On January 7, 2016, Bassknight again placed an order using DoorDash for

8    delivery of food from Joya Thai restaurant.

9        35.    On this second order, she ordered, among other things, Spicy Pork and Pineapple

10   Fried Rice (listed on DoorDash for $9.50), Tom Yum Koong Soup (listed at $5.50) and Pad Thai

11   (listed at $11.50).

12       36.    Plaintiff also paid a delivery fee and a tip for the driver.

13       37.    According to the Joya Thai website, however, the restaurant's price of the Spicy

14   Pork and Pineapple Fried Rice was $9.50 (instead of $11.50); the restaurant cost of Pad Thai was

15   $8.95 (instead of $11.50); and the restaurant cost of Tom Yum  soup was $4.50 (instead of

16   $5.50).

17       38.    In total, Bassknight was overcharged by $5.55 on her January 7, 2016 order.

18       39.    At the time she placed both of her orders for delivery from Joya Thai restaurant,

19   Bassknight was not aware that costs of the menu items listed on DoorDash were not the same as

20   the cost of the menu items at the Joya Thai restaurant itself.

21       40.    Bassknight would not have placed her orders with DoorDash for food from Joya

22   Thai restaurant had she known that, in addition to the delivery fee and tip, additional DoorDash

23   charges were packed into the price of the food itself (thus inflating those prices and leading to an

24   understated "delivery fee") and that she was being charged more for the food items that she

25   ordered than Joya Thai restaurant charges for the same items.

26                            **CLASS ACTION ALLEGATIONS**

27       41.    Plaintiff brings this lawsuit, both individually and as a class action, on behalf of

28                                      7

similarly situated consumers, pursuant to Rule 23 of the Federal Rule of Civil Procedure. The proposed class consists of:

**Class:** All persons in the United States who ordered food from DoorDash and were charged more for a food item than was reflected on the restaurant menu from where the order was delivered, where the restaurant did not have a pre-arranged business relationship with DoorDash (the "Class").

**Sub-Class:** All members of the Class where the restaurant in question is located in New York (the "Sub Class").

42.     Specifically excluded from the Class and the alternative Sub-Class (collectively, "Class") are: (a) Defendant, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, or any of them; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using DoorDash services; (c) the Judge and Magistrate Judge to whom this case is assigned and their immediate families; and (d) counsel for any party in the case and their immediate families.

43.     **Numerosity/Impracticability of Joinder.** The members of the Class are so numerous that joinder of all members is impracticable. The proposed Class includes thousands of members. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control, or otherwise obtained through reasonable means.

44.     **Typicality.** The representative Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent. Plaintiff and all members of the Class purchased food from DoorDash at an undisclosed and higher menu price and have sustained damages arising out of the same wrongful course of conduct. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

45.     **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class

8

members.  These common legal and factual questions include, but are not limited to, the following:

    a.      Whether DoorDash overcharged consumers;

    b.      Whether DoorDash's menu prices are deceptive;

    c.      Whether DoorDash's disclosed "Delivery Fee" is deceptive;

    d.      Whether Defendant's conduct as alleged herein violates the CLRA;

    e.      Whether Defendant's conduct as alleged herein violates the UCL;

    f.      Whether Defendant's conduct as alleged herein violates the FAL;

    g.      Whether Defendant's conduct as alleged herein violates the NYGBL § 349;

    h.      Whether Defendant's conduct as alleged herein violates the NYGBL § 350;

    i.      Whether Defendant has been unjustly enriched by its conduct alleged herein;

    j.      Whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to equitable and other relief, and, if so, the nature of such relief; and

    k.      Whether Plaintiff and the members of the Class have sustained loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof.

46.    **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously.  Plaintiff is a member of the Class and does not have interests antagonistic to, or in conflict with, the other members of the Class.

47.    **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since, among other things, individual litigation and/or joinder of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by individual Class members as a result of Defendant's wrongful conduct alleged herein are too small to warrant the expense of individual litigation. The likelihood of individual Class members prosecuting their own separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly

CLASS ACTION COMPLAINT

1    burdened by individual litigation of such cases.  Individual members of the Class do not have a

2    significant interest in individually controlling the prosecution of separate actions and

3    individualized litigation would present the potential for varying, inconsistent, or contradictory

4    judgments and would magnify the delay and expense to all of the parties and to the court system

5    because of multiple trials of the same factual and legal issues.  Plaintiff does not foresee any

6    difficulty in the management of this litigation that would preclude its maintenance as a class

7    action.

8        48.    Adequate notice can be given to Class members directly using information

9    maintained in Defendant's records, or through notice by publication.

10       49.    The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil

11   Procedure because Defendant has acted on grounds generally applicable to the putative Class

12   members, thereby making final injunctive relief and corresponding declaratory relief appropriate

13   with respect to the claims raised by the Class.

14       50.    The Class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil

15   Procedure because questions of law and fact common to Class members will predominate over

16   questions affecting individual members, and a class action is superior to all other methods for

17   fairly and efficiently adjudicating the controversy and causes of action described in this

18   Complaint.

19                                **California Contacts**

20       51.    DoorDash is headquartered in San Francisco, California, and maintains its

21   principal place of business in San Francisco, California.

22       52.    DoorDash conducts substantial business in California, with a significant portion

23   of the proposed nationwide Class located in California.

24       53.    California hosts a significant portion of DoorDash's U.S. operations.

25       54.    In addition, the conduct that forms the basis for each and every Class members'

26   claims against DoorDash emanated from its headquarters in San Francisco, California.  This

27   includes DoorDash's policies and practices, which serve as the basis for Plaintiff's Complaint.

28

                                      10

CLASS ACTION COMPLAINT

55.     DoorDash's personnel responsible for deciding not to disclose the markup to consumers are located in California and the decisions regarding their conduct were made and implemented from California.

56.     DoorDash's presence is more substantial in California than any other state.

57.     DoorDash has significant contacts with the State of California, such that nationwide application of California law is appropriate.  Further, DoorDash's conduct at issue emanated from California such that application of California law nationwide is appropriate.  *See Clothesrigger, Inc., v. GTE Corp.*, 236 Cal.Rptr. 605 (1987); *Wershba v. Apple Computer, Inc.*, 110 Cal.Rptr. 2d 145 (2001).

### FIRST CAUSE OF ACTION
**(Violation of the CLRA - California Civil Code § 1750, *et seq.*)**

58.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

59.     Plaintiff brings this cause of action on behalf of herself and the Class.

60.     This cause of action is brought under the CLRA.  Plaintiff and the Class are consumers as defined by California Civil Code § 1761(d).  The food constitutes "goods" and the delivery of food constitutes "services" within the meaning of the CLRA.

61.     Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the delivery of food at issue herein to Plaintiff and members of the Class in violation of, *inter alia*, the following provisions:

    a.     Representing that the goods and services have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

    b.     Advertising goods and services with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

    c.     Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

    d.     Representing that the goods and services have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code §

11

1770(a)(16)).

62.   Defendant violated the CLRA by overstating unaffiliated restaurants' menu prices (which Doordash inflated in order to roll in its undisclosed fee), understating its delivery charge (which should have included both the disclosed fee and the undisclosed fee that was, instead, rolled into the menu prices), and charging undisclosed fees to consumers.

63.   DoorDash has sought to prevent discovery of its deceptive conduct, *inter alia*, by:

   a.   Failing to clearly disclose its practice of upcharging on food items ordered from restaurants with which DoorDash does not have a participation agreement (*i.e.* where DoorDash has been unable to negotiate with the restaurant to receive a "cut" of the restaurant's regularly-charged menu prices with regard to customers using DoorDash to place their order);

   b.   Training and instructing its delivery drivers not to give consumers the restaurant receipts (which would disclose lower menu prices than those charged by DoorDash) at the time of delivery; and

   c.   Training and instructing its delivery drivers and other staff to hide the fact that they are from DoorDash when placing and picking up orders with restaurants with whom DoorDash has no participation agreement (which prevents the restaurants themselves from learning of, preventing and/or notifying consumers of the hidden charges).

64.   Plaintiff and other Class members, in using DoorDash's service herein alleged, reasonably acted in response to Defendant's above representations or would have considered the omitted facts detailed herein material to their decision to order food from DoorDash.  Plaintiff and the Class members have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

65.   The representations and/or omissions regarding DoorDash's services were material to Plaintiff and members of the Class.  Defendant intended that Plaintiff and Class members would rely on these representations and they did, in fact, rely on the representations.

66.   Defendant's conduct was and is fraudulent, wanton, and malicious.

67.   As a result of Defendant's wrongful conduct, pursuant to California Civil Code § 1782(d), Plaintiff and the Class members request that this Court enjoin Defendant from continuing to violate the CLRA.  Such conduct is ongoing and continues to this date.  Plaintiff

12

CLASS ACTION COMPLAINT

and the Class are therefore entitled to the relief described below as appropriate for this cause of action.  Plaintiff reserves the right to amend her Complaint at a later time to recover damages under the CLRA.

68.     Plaintiff and the members of Class also are entitled to recover attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

**SECOND CAUSE OF ACTION**

**(Violation of the FAL - California Business and Professions Code § 17500, *et seq.*)**

69.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

70.     Plaintiff brings this cause of action on behalf of herself and the Class.

71.     Defendant has engaged in the advertising and marketing alleged herein with an intent to directly and/or indirectly induce the purchase of food from DoorDash's app and/or internet website.

72.     Defendant's representations and/or omissions regarding the price of food purchased from DoorDash's app and/or internet website are false, misleading, and deceptive, as are Defendant's representation's regarding the cost of its services.

73.     Defendant violated the FAL by overstating unaffiliated restaurants' menu prices (which Doordash inflated in order to roll in its undisclosed fee), and by understating its delivery charge (which should have included both the disclosed fee and the undisclosed fee that was, instead, rolled into the menu prices).

74.     DoorDash has sought to prevent discovery of its deceptive conduct, *inter alia*, by:

    a.     Failing to clearly disclose its practice of upcharging on food items ordered from restaurants with which DoorDash does not have a participation agreement (*i.e.* where DoorDash has been unable to negotiate with the restaurant to receive a "cut" of the restaurant's regularly charged menu prices with regard to customers using DoorDash to place their order);

    b.     Training and instructing its delivery drivers not to give consumers the restaurant receipts (which would disclose lower menu prices than those charged by DoorDash) at the time of delivery; and

    c.     Training and instructing its delivery drivers and other staff to hide the fact

13

that they are from DoorDash when placing and picking up orders with restaurants with whom DoorDash has no participation agreement (which prevents the restaurants themselves from learning of, preventing and/or notifying the consumer of the hidden charges).

75. Defendant's false, misleading, and deceptive representations and/or omissions were intended to, and did, deceive reasonable consumers, including Plaintiff.

76. The false, misleading, and deceptive representations and/or omissions were material to Plaintiff and the Class members in connection with their respective decisions to order food from DoorDash's app and/or internet website.

77. Plaintiff and other Class members relied on the false, misleading, and deceptive representations and/or omissions, which played a substantial part in influencing the decision of Plaintiff and the Class to order food from DoorDash.

78. At the time it made and disseminated the representations and/or omissions alleged herein, Defendant knew, or should have known, that the statements were untrue or misleading, and acted in violation of the FAL.

79. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore, are a violation of the FAL.

80. As a result of Defendant's wrongful conduct, Plaintiff and the Class members request that this Court enjoin Defendant from continuing to violate the FAL. Such conduct is ongoing and continues to this date. Plaintiff and the Class are therefore entitled to the relief described below as appropriate for this cause of action.

## THIRD CAUSE OF ACTION
### (Violation of the UCL - California Business and Professions Code § 17200, *et seq.*)

81. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

82. Plaintiff brings this cause of action on behalf of herself and the Class.

83. The UCL prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading

14

1   advertising, in violation of the UCL.

2       84.    The UCL also prohibits any "unlawful . . . business act or practice." Defendant

3   has violated the UCL's prohibition against engaging in unlawful acts and practices by, *inter alia*,

4   making the representations and/or omissions of material facts, as set forth more fully herein, and

5   violating California Civil Code §§ 1572-1573, 1709, 1710, 1711, 1770, Business & Professions

6   Code §17200, *et seq.,* § 17500, *et seq.,* and the common law.

7       85.    Plaintiff and the Class reserve the right to allege other violations of law which

8   constitute additional unlawful business acts or practices. Such conduct is ongoing and continues

9   to this date.

10      86.    Defendant's acts, omissions, misrepresentations, practices and nondisclosures, as

11  alleged herein, also constitute "unfair" business acts and practices within the meaning of

12  Business & Professions Code § 17200, *et seq,* in that its conduct is substantially injurious to

13  consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as

14  the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

15      87.    As stated in this Complaint, Plaintiff alleges violations of consumer protection,

16  unfair competition and truth in advertising laws in California resulting in harm to consumers.

17  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising,

18  unfair competition and deceptive conduct toward consumers.  This conduct constitutes violations

19  of the unlawful, fraudulent, and unfair prongs of the UCL.

20      88.    Defendant's claims, non-disclosures and misleading statements, as more fully set

21  forth above, were false, misleading and/or likely to deceive the consuming public within the

22  meaning of Business & Professions Code § 17200.

23      89.    As discussed above, Plaintiff and the members of the Class ordered food directly

24  from DoorDash. Plaintiff and members of the Class were injured in fact and lost money or

25  property as a result of such acts of unfair competition.

26      90.    There were reasonable available alternatives to further Defendant's legitimate

27  business interest other than the conduct described of herein.

28

CLASS ACTION COMPLAINT

91.     The injuries suffered by Plaintiff and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Class members should have or could have reasonably avoided.

92.     Defendant's conduct caused and continue to cause substantial injury to Plaintiff and other Class members. Plaintiff has suffered injury in fact and has lost money as a result of Defendant's conduct.

93.     Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, Plaintiff and the Class will continue to be injured by Defendant's conduct.

94.     Defendant, through its acts of unfair competition, has acquired money from Class members. Defendant's revenues attributable thereto are thus directly traceable to the millions of dollars paid out by Plaintiff and the Class. Plaintiff and the Class request this Court to enjoin Defendant from continuing to violate the UCL.

95.     The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.  Plaintiff and the Class, therefore, are entitled to relief described below as appropriate for this cause of action.

## FOURTH CAUSE OF ACTION
### (Violation of NYGBL § 349)

96.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

97.     Plaintiff brings this cause of action on behalf of herself and the Sub-Class. This cause of action is brought, in the alternative, to the claims brought by Plaintiff on behalf of herself and the (national) Class under California law.

98.     Defendant's acts and practices as set forth herein constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in the State of New York unlawful, independent of whether these acts and practices constitute violations of any other law.

99.     These deceptive acts and practices were committed in conduct of business, trade,

16

commerce or the furnishing of a service in New York State.

100.   Each of these actions was consumer-oriented and involved misleading conduct that is recurring and has a broad impact upon the public.

101.   Specifically, Defendant routinely overcharged the public by means of packing undisclosed charges into what otherwise appear to be the prices charged by the restaurants' themselves.

102.   As set forth above, this misconduct is intentional and part of Defendant's business plan, and involves thousands of consumers.

103.   By deceptively rolling additional charges into the prices for food items, Defendant hides the true cost of the service it provides and overcharges consumers.

104.   In addition, Defendant has also violated NYGBL § 349 by materially understating its "delivery fee," which, in reality, includes not just the amount disclosed as a "delivery fee" but also the undisclosed charge rolled into the price of the menu items.

105.   As a result of these violations of NYGBL § 349, Plaintiff and the Class suffered pecuniary harm.

106.   Specifically, Plaintiff and the Class suffered pecuniary harm every time they purchased an item for which the price charged by DoorDash exceeded the price charged by the restaurant for that item.

107.   They also suffered pecuniary harm every time they paid the disclosed delivery fee but were also charged the undisclosed delivery fee packed into the menu price of a food item.

DoorDash has sought to prevent discovery of its deceptive conduct by:

      a.    Failing to clearly disclose its practice of upcharging on food items ordered from restaurants with which DoorDash does not have a participation agreement (*i.e.* where DoorDash has been unable to negotiate with the restaurant to receive a "cut" of the restaurant's regularly charged menu prices with regard to customers using DoorDash to place their order);

      b.    Training and instructing its delivery drivers not to give consumers the restaurant receipts (which would disclose lower menu prices than those charged by DoorDash) at the time of delivery; and

      c.    Training and instructing its delivery drivers and other staff to hide the fact

17

that they are from DoorDash when placing and picking up orders with restaurants with whom DoorDash has no participation agreement (which prevents the restaurants themselves from learning of, preventing and/or notifying the consumer of the hidden charges).

108.   Defendant's violations were willful and knowing, and committed in bad faith.

109.   For these reasons, Plaintiff (and every Sub-Class member) is entitled to actual damages, three times the actual damages up to $1,000, punitive damages, costs and reasonable attorneys' fees, and declaratory judgment that Defendant's practices are deceptive, and an injunction against said deceptive practices.

**FIFTH CAUSE OF ACTION**
**(Violation of NYGBL § 350)**

110.   Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

111.   Plaintiff brings this cause of action on behalf of herself and the Sub-Class.  This cause of action is brought, in the alternative, to the claims brought by Plaintiff on behalf of herself and the (national) Class under California law.

112.   The acts and practices set forth above also constitute violations of NYGBL § 350, which makes false advertising unlawful, independent of whether these acts and practices constitute violations of any other law.

113.   This false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

114.   Under NYGBL § 350, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

18

115.    Defendant's listing on its website and apps of food prices are advertising as defined above.

116.    These listings are false in a material respect because they overstate the prices of restaurants with whom DoorDash does not have a participation agreement in order to pack additional DoorDash fees.

117.    These listings are also false by omission because they fail to reveal that the charges are higher than those actually charged by the restaurants in question.

118.    Defendant also falsely advertises with regard to its disclosed delivery fee, which is also advertising as defined under the statute and which is materially understated each and every time an additional fee is packed into the cost of the food items themselves.

119.    DoorDash's false advertising was done knowingly, willfully and in bad faith.

120.    DoorDash has sought to prevent discovery of its false advertising by:

a.    Failing to clearly disclose its practice of upcharging on food items ordered from restaurants with which DoorDash does not have a participation agreement (*i.e.* where DoorDash has been unable to negotiate with the restaurant to receive a "cut" of the restaurant's regularly charged menu prices with regard to customers using DoorDash to place their order);

b.    Training and instructing its delivery drivers not to give consumers the restaurant receipts (which would disclose lower menu prices than those charged by DoorDash) at the time of delivery; and

c.    Training and instructing its delivery drivers and other staff to hide the fact that they are from DoorDash when placing and picking up orders with restaurants with whom DoorDash has no participation agreement (which prevents the restaurants themselves from learning of, preventing and/or notifying the consumer of the hidden charges).

121.    As a result of the DoorDash's false advertising in violation of NYGBL § 350, Plaintiff and the Sub-Class suffered actual damages in the amount of the difference between DoorDash's advertised prices for food items and the amounts actually charged by the restaurants in question.

122.    Likewise Plaintiff and the Sub-Class suffered actual damages in the amount of the difference between the advertised delivery fee and the total DoorDash fee including the fee

19

CLASS ACTION COMPLAINT

rolled into the price of the food items themselves.

123.    For these reasons, Plaintiff (and every Sub-Class member) is entitled to declaratory relief, injunctive relief (enjoining the false advertising practices described above), actual damages, three times the actual damages up to $10,000, punitive damages, costs and reasonable attorneys' fees.

### SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

124.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

125.    Plaintiff brings this cause of action on behalf of herself and the Class.

126.    This claim is asserted on behalf of Plaintiff and the Class to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

127.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched at Plaintiff's expense. Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiff and the Class). Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class.

128.    It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration and other monies obtained by and from its wrongful conduct in deceptively charging Plaintiff and the Class for undisclosed fees.

129.    Plaintiff, on behalf of herself and all others similarly situated, seeks restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief as follows as appropriate for the above causes of action:

20

CLASS ACTION COMPLAINT

a.    An Order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

b.    A temporary, preliminary, and/or permanent Order for injunctive relief: (1) requiring Defendant to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair, and deceptive business acts and practices complained of herein; (3) requiring Defendant to undertake an informational campaign to inform members of the general public as to the wrongfulness of Defendant's practices; and (4) requiring Defendant to pay Plaintiff and all members of the Class the amounts paid for the food ordered from DoorDash's app and/or internet website;

c.    Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.    All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.    Actual, statutory, treble and/or punitive damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.    Statutory pre-judgment and post-judgment interest on any amounts;

g.    Payment of reasonable attorneys' fees and costs;

h.    Payment of a reasonable service fee to the named Plaintiff for her efforts on behalf of the Class; and

i.    Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP

Dated: April 8, 2016              BY:    /s/ Rose F. Luzon
                                         ROSE F. LUZON (SBN 221544)
                                         SHEPHERD, FINKELMAN, MILLER
                                          & SHAH, LLP

21

CLASS ACTION COMPLAINT

1    401 West A Street, Suite 2550
     San Diego, CA 92101
2    Telephone: (619) 235-2416
     Facsimile: (866) 300-7367
3    Email: rluzon@sfmslaw.com

4
     JAMES C. SHAH (SBN 260435)
5    SHEPHERD, FINKELMAN, MILLER
       & SHAH, LLP
6    35 East State Street
     Media, PA 19063
7    Telephone: (610) 891-9880
     Facsimile: (866) 300-7367
8    Email: jshah@sfmslaw.com

9
     DANIEL A. SCHLANGER
10   (*Pro Hac application to be submitted*)
     KAKALEC & SCHLANGER, LLP
11   85 Broad Street, 18th Floor
     New York, NY 10004
12   Telephone: 212.500.6114, ext. 101
     Facsimile: 646.612.7996
13   Email: dschlanger@kakalec-schlanger.com

14
     PATRICIA KAKALEC
15   (*Pro Hac application to be submitted*)
     KAKALEC & SCHLANGER, LLP
16   85 Broad Street, 18th Floor
     New York, NY 10004
17   Phone: 212.500.6114, ext. 103
     Facsimile: 646.612.7996
18   Email: pakakelec@kakalec-schlanger.com

19
     *Attorneys for Plaintiff and the Class*
20

21

22

23

24

25

26

27

28

                          22

CLASS ACTION COMPLAINT